29940. WILSON et al. v. STRANGE et al.

HALL, Justice.

This is an action for declaratory judgment, writ of mandamus, and damages, brought by Banks County, the Banks County Board of Commissioners of Roads and Revenues and its members officially and individually, and the Banks County Board of Education and its members officially and individually, against Habersham County, its corresponding boards, and the members thereof officially and individually.

The dispute sprang from the merger of the old Baldwin independent school district, which had previously served parts of both counties, into the Habersham school system. Pursuant to at least one 1952 contract and perhaps other prior contracts, Banks County students from the Baldwin district continued to attend school in Habersham County. In June, 1971, a new contract was negotiated which provided that the Banks children could continue to matriculate in Habersham County "provided the Habersham County Board of Education will accept the student," and that Habersham County could count the Banks pupils attending its schools in its average daily attendance (ADA) and thereby receive state funds for those students. Reciprocal provisions were made for Habersham students to attend Banks schools under the same conditions. The contract was to remain in effect for 25 years.

It is uncontroverted that when the parties entered into this agreement, Habersham County wished to count the Banks students in its ADA not only for the yearly state operating funds, but also for state Capital Outlay Funds for construction of additions and the renovation of several Habersham schools. Since the money is allocated on a per student rate based on the average daily attendance, Habersham County was eligible to receive $218,000 more in Capital Outlay Funds from the state by

including the Banks County students in the ADA. To prevent a situation where the same students would be counted by both counties, however, the State Board of Education required a 25-year contract between the counties transferring the students. On this basis, the contract now in litigation was entered into and submitted to the State Board of Education as part of the Habersham County application for Capital Outlay Funds in 1971.

During the 1973-1974 school year, the Habersham Board of Education, disgruntled by the increased local costs of education, voted to assess tuition against the Banks County students attending its schools. The two school boards met several times to negotiate and the matter was informally presented to the State Board of Education, but no resolution was achieved. On the opening day of the 1974-1975 term, Habersham County refused to admit the Banks County students. Thereafter, the Banks County plaintiffs filed this suit in Habersham County seeking a temporary restraining order against the Habersham Board's refusing to accept the Banks County pupils pending a final resolution of the matter. The plaintiffs successfully moved to transfer the case under Code Ann. § 3-211 to the Hall County Superior Court. The resulting order entered after a lengthy hearing, was styled a "Judgment Dismissing Petition for Permanent Relief subject to Retention of the Suit for the Purpose of Granting Temporary Relief Pending Proceedings by the Parties to Obtain Administrative Relief."

In its order, the trial court granted the temporary restraining order admitting approximately 195 Banks County children to the Habersham schools. However, it dismissed the prayer for permanent relief on the ground that Banks County had not exhausted its administrative remedy by appeal to the State Board of Education under Code Ann. § 32-650. Furthermore, although the trial court found the 25-year contract valid, it held that fairness to the taxpayers of Habersham County demanded that Banks County help bear the local share of school costs by paying the per pupil local cost, less the transportation expenses that Banks already paid. The Banks County plaintiffs appeal this order, raising 22

enumerations of error.

1. Code Ann. § 32-910 authorizes the county school board to act as a "tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, . . ." with a right of appeal in either party to the State Board of Education. The trial court, relying on *Surrency v. Dubberly,* 225 Ga. 735 (171 SE2d 306), construed this section to require the Banks County plaintiffs to make a formal appeal to the State Board of Education before resorting to the courts. This ruling is the first alleged error enumerated by plaintiffs, and our decision on this point will also decide Enumerations 2, 6, 8, 21 and 22. We agree with Banks County that "a local controversy" within the meaning of Code Ann. § 32-910 refers only to disputes within one school system and not to those, like the present case, involving a contract between county boards of education under Code Ann. § 32-650.

In *Surrency,* supra, the citizens of Wayne County sued the Wayne County Board of Education to prevent the board from admitting 74 Long County students to the Wayne County schools. The trial court refused to entertain the suit because the plaintiff taxpayers had failed to exhaust their administrative remedy by appealing to the State Board of Education. This court affirmed under Code Ann. § 32-910, because the dispute was a local controversy between citizens of the same county. See also *Carter v. Board of Education,* 221 Ga. 775 (147 SE2d 315); *Walker v. McKenzie,* 209 Ga. 653 (74 SE2d 870); *Snipes v. Anderson,* 179 Ga. 251 (175 SE 650). Confusion arises from the language in *Surrency* which attempts to construe Code Ann. § 32-650, authorizing the State Board of Education to make rules and regulations for inter-county education, in light of Code Ann. § 32-910, which empowers local school boards to act as school courts with a right of appeal to the state board. However, these are two separate sections and need not necessarily be read together. Where two county school boards are involved, there is no local controversy, and Code Ann. § 32-910 does not apply.

This does not mean that where two school boards are involved there would never be a need for the

administrative process. Code Ann. § 32-650 has two distinct provisions: One, administrative and the other, contractual.

Under the administrative provision the state school board is given authority to formulate rules and regulations providing for students to attend school in adjacent counties. In a controversy between school boards concerning students crossing county lines under these rules and regulations, administrative law and policy would require exhaustion of administrative remedies before action in the courts.

However, under the second provision in Code Ann. § 32-650, local school boards may contract with each other for the education of their pupils, independent of the state school board and its rules and regulations. In a dispute between two contracting school boards, therefore, there would be no administrative involvement and the parties may proceed in court directly. For example, in *Walton County Bd. of Ed. v. Academy of Social Circle,* 229 Ga. 114 (189 SE2d 690), where a contract between two separate and independent school systems was involved, the trial court properly entertained the city's suit seeking state funds from Walton County for the education of some of the county's students. See also, *Smith v. Maynard,* 214 Ga. 764 (107 SE2d 815); *Fordham v. Harrell,* 197 Ga. 135 (28 SE2d 463).

Since the case at bar also involves a contract between two separate and independent school systems, the dispute is not a local controversy within Code Ann. § 32-910, and is cognizable by the courts under Code Ann. § 32-650. The trial court therefore, erred in holding that the matter was a local controversy, in requiring exhaustion of administrative remedy by appeal to the State Board of Education, in dismissing plaintiffs' petition for permanent relief, and in failing to grant plaintiffs' motion to reconsider the application of *Surrency.*

2. Defendants further contend, however, that even if exhaustion of administrative remedies is not required the plaintiffs are not entitled to relief because the contract was not properly approved or recorded on the board's minutes, nor was it entered into at an official meeting place of the Habersham Board of Education.

Both the Georgia Constitution, Art. VIII, Sec. IX, Par. II (Code Ann. § 2-7202), and the Georgia Code (Code Ann. § 32-650), provide that "[a]ny two or more county boards of education . . . may contract with each other for the care, education, and transportation of pupils . . ." Therefore, Banks and Habersham Counties had the power to enter into a contract under which students of one county would attend the schools of the other, with state funds flowing to the system educating the child. *Walker v. McKenzie,* 209 Ga. 653, supra. The board may not now challenge the validity of this contract which it was authorized to make. Having represented to the State Board of Education that it had a valid contract, and having accepted the extra $218,000 as a result, the board has ratified the contract. *City of Conyers v. Kirk & Co.,* 78 Ga. 480 (3 SE 442); *Diamond Power Specialty Co. v. City of West Point,* 11 Ga. App. 533 (75 SE 903). Because the Banks County Board of Education has relied on the contract in not providing teachers, supplies and facilities for the students Habersham County agreed to educate, the Habersham Board of Education is additionally estopped to deny its validity. *City of Summerville v. Georgia Power Co.,* 205 Ga. 843 (55 SE2d 540).

Defendants also urge that the contract term, ". . . provided the Habersham County Board of Education will accept the student . . ." made the contract discretionary and the board may now rightly refuse to allow the Banks County students to attend its schools. It is clear from the testimony of all the parties that the clause was intended for the purpose of dealing with children presenting disciplinary problems.

This decision also resolves one issue in plaintiffs' enumeration of error 19, asserting that the trial court erred in failing to strike defendants' seventh defense that the contract was void as against public policy. Since such a contract is clearly authorized by the Constitution and statutes, supra, it can hardly be said that it is contrary to public policy. However, it was not error to fail to strike this defense since it was germane to the issues before the court and not prejudicial to the plaintiffs. 2A Moore's Federal Practice, Par. 12.21 (2d Ed. 1974).

3. In its 14th and 21st enumerations of error,

plaintiff appellant cites the court's refusal to grant a mandamus in order to force the Habersham Board of Education to enter the contract on its minutes. We cannot agree.

A contract with the county commissioners must be in writing and must be entered on the minutes of the proper authority in order to be enforceable. Code Ann. § 23-1701; *Board of Commrs. v. MacDougald Const. Co.,* 157 Ga. 595 (122 SE 317). This section, however, does not apply to the County Board of Education. We can find, and we have been cited, no authority requiring the County Board of Education to enter its contracts on its minutes before it is enforceable. Therefore, the trial court properly refused to issue the mandamus.

4. Plaintiffs enumerate as errors, 4, 9, 12, 15 through 18 and 20, the trial court's holding that, although the contract was valid, other considerations required reformation of the contract without evidence of fraud, mistake or accident, to provide for tuition payments from Banks County to Habersham County. Again we agree with plaintiffs and reverse the trial court's ruling on this point.

It is a well settled rule that the courts will not interfere with the decisions of a school board unless the act violates the law or is a gross abuse of discretion. *Walker v. McKenzie,* 209 Ga. 653 (74 SE2d 860); *Keever v. Board of Education,* 188 Ga. 299 (3 SE2d 886). The contract itself does not violate any recognized principles of the law of contracts. The provisions for mutual exchange of pupils and the state funds allocated to each transferring student constitute sufficient consideration. See Code Ann. § 20-307. Although the Habersham officials do not consider these provisions adequate in light of the reduced amount of state funds now available to the local school districts, adequacy is determined at the time of the execution of the contract. *Pearson v. George,* 209 Ga. 938 (77 SE2d 1).

We do not find that the contract entered into by the Habersham County Board of Education shows a gross abuse of discretion, nor do we find lack of consideration merely because the contract fails to provide for tuition or other local support to be paid by the transferring students'

home county. In fact, the evidence shows that in more than half of similar contracts around the state, there are no provisions for tuition.

The defendants, however, urge that such a contract must be read in conjunction with other provisions of the Constitution which forbid a county to incur a debt beyond 7 percent of the assessed value of its taxable property without the consent of the voters, (Georgia Constitution, Art. VII, Sec. VII, Par. I (Code Ann. § 2-6001)), and which forbid granting any donation or gratuity to a person, corporation or association. Georgia Constitution, Art. VII, Sec. I, Par. II (Code Ann. § 2-5402). Defendants argue that these sections, read together, require Banks County to pay tuition to Habersham County so that the taxpayers of Habersham do not incur a debt or donate gratuities to Banks students by paying the local cost of their education. We do not agree.

The manifest purpose of the people and the legislature as expressed in the Constitution and statutes is to allow flexibility in arranging for the education of the children of this state. There are no requirements for tuition payments across county lines expressed in the Constitution and statutes authorizing school contracts, and many contracts exist with official sanction which do not provide for any tuition. To require such payments would unduly restrict the bargaining room of the parties, and would ignore other benefits which might be received through contract. For example, Habersham County received $218,000 in Capital Outlay Funds which has inured to the benefit of Habersham County's citizens in the form of its improved school property. Of course, Habersham County must plan its entire school program so as not to overreach the constitutionally mandated debt ceiling, but such a requirement does not forbid a contract such as the one at issue in this case.

Consequently, we hold that the trial court erred in requiring tuition payments by Banks County to the Habersham County schools, but that it did not err in denying plaintiff's motions to strike defendants' counterclaim and defenses (Enumerations 15 to 18 and 20) as the questions raised by the defendants were germane to the issues and not prejudicial to the parties.

5. The plaintiffs in enumerations of error 3 and 13 have also alleged that the trial court erred in dismissing the claim for damages against the individual members of the Habersham County boards. With this we cannot agree, and accordingly affirm the trial court's ruling on this point.

Banks County claims individual liability of the Habersham County officers under both tort and contract theories. The tort arises, according to the plaintiffs, from injury to the peace of mind of the parents and students who were wrongfully denied admittance to the Habersham County Schools. This contention is without merit, even without reaching the standing question argued by defendants, as there is no evidence that any official acts were done "oppressively, maliciously, corruptly, or without authority of law." Code Ann. § 69-208; *Duffee v. Jones,* 208 Ga. 639 (68 SE2d 699); *Beckanstin v. Drake,* 89 Ga. App. 636 (80 SE2d 506); *Mathis v. Nelson,* 79 Ga. App. 639 (54 SE2d 710). Nor are public officials liable personally on contracts entered into by them within the scope of their authority. Code Ann. § 4-407; *Bowden v. Eubanks,* 57 Ga. App. 414 (195 SE 582). There is no evidence that the defendants entered into the contract in bad faith, Code Ann. § 20-1404, 20-1405; *Lovell v. Frankum,* 145 Ga. 106 (88 SE 569), nor that the individual defendants acted wantonly or maliciously in refusing to admit the Banks County children. Code Ann. §§ 105-2002, 105-2003; *Hughes v. Bivins,* 31 Ga. App. 198 (121 SE 590). The demand for damages based on the individual tort and contract liability of the board members was thus properly dismissed.

6. Plaintiffs enumerations of error 5, 7, 10 and 11 are related to constitutional issues not heard or decided by the lower court. The trial court was correct in not hearing the parties on this question since the relevant amendments had not been filed by the plaintiffs, neither the attorney general nor his representative was present, and the hearing was interlocutory in nature. We therefore remand the case to the Hall County Superior Court for further proceedings not inconsistent with this opinion.

*Judgment reversed in part, affirmed in part, and remanded. All the Justices concur, except Gunter, J., who*

*concurs specially.*

Argued May 12, 1975 — Decided September 5, 1975 — Rehearing denied September 16, 1975.

*Reed & Dunn, Douglas Parks, Douglas W. Mc-Donald,* for appellants.

*Greer, Sartain & Carey, Tifton S. Greer, Adams, Ellard & Frankum, Stephen D. Frankum,* for appellees.

Gunter, Justice, concurring.

I concur in the judgment rendered by the court, but at the same time I desire to register my conviction that the judicial system is not the appropriate forum for the resolution for this contractual controversy between two county boards of education.

A contractual controversy between two entities called boards of education, such as is presented here, affects not only those two entities, but it also affects the school population and the citizens and taxpayers of each of the two counties. In such a situation, I think that it is the duty and responsibility of the State Board of Education to resolve the conflict between and among the competing interests by insisting upon and requiring, if need be, the most equitable solution that it, the state board, can devise.

The General Assembly of Georgia has wisely conferred upon the state board the power to establish rules, regulations, policies, standards or requirements that are applicable to the local units. And for failure to comply with the same by any local unit, "the State Board may, in its discretion, withhold from such local unit all or any part of the State-contributed Minimum Foundation Program funds alloted to such local unit under the provisions of this Chapter until such time as full compliance is made by the local unit." Code Ann. § 32-656.

This is the kind of contractual dispute that cannot be readily solved in the judicial system as can the normal breach of contract or specific performance action.

I think that the State Board of Education must assert its power and authority with each of these local units,

resolve the matter as best it can, and then if either or both of the local units are aggrieved by the final decision by the State Board, they can seek judicial review of such decision in the courts. Code Ann. § 32-656.

I acknowledge that the State Board of Education must take the initiative by using its power and authority in the resolution of such disputes, and if it declines to do so, as it apparently has in this case, then the courts can merely do the very best that they can in applying the normal legal rules applicable to contracts to abnormal contracts involving two local units of education and the State Board of Education.

I merely write this concurring opinion to express my view that the public, the local boards, and the state board should not expect the judicial system to solve the problems in our public education system that are judicially insoluble.